UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ELPIDIO AVILEZ, #1011021, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 1:14-cv-045-BL |
| TDCJ-CID, et al., | § § § § | |
| Defendants | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Elpidio Avilez, an inmate incarcerated at the French Robertson unit of the Texas Department of Criminal Justice (TDCJ), filed this action *pro se* and *in forma pauperis*, on March 11, 2014, pursuant to 42 U.S.C. § 1983, Religious Land Use and Institutionalized Persons Act (RLUIPA), and Texas Religious Freedom Restoration Act (TRFRA). (Doc. 1). The case was referred to the United States Magistrate Judge on March 27, 2014, pursuant to 28 U.S.C. § 636(c) to conduct a hearing under the authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). (Doc. 6). On October 23, 2014, Avilez testified at a *Spears* hearing before this Court, where he declined to consent to proceed before a United States Magistrate Judge. (Doc. 8-9). Because the parties did not consent to proceed before a United States Magistrate Judge, the Court files this Report and Recommendation.

### Claims

Avilez claims that during a regular bi-annual shakedown, Defendants Kelley and Reyes forced him to dispose of most of his religious books and bible notes because Defendants claimed

he had excessive amounts of property. Revisions 4 and 5 of TDCJ's administrative directive AD-03.72 allow inmates to obtain a container with a volume of 2 cubic feet for the storage of *legal* materials. Plaintiff claims he is entitled to use the container for storage of his *religious* material, and requested such a container but was denied. The librarian informed Plaintiff that such containers were not issued for storage of religious material. Thus, Plaintiff maintains that AD-03.72 substantially burdens his free exercise of religion.

Plaintiff contends that to properly practice Christianity, he should (1) study various translations and editions of the Bible on a daily basis; and (2) he should make, keep, and reference notes on the parts of the various translations and editions of the Bibles which you study. Plaintiff argues that the confiscation of various religious materials interferes with his ability to properly practice his religion. Plaintiff also alleges that he has experienced retaliation at the hands of Kelley and Reyes after filing grievances regarding the confiscation of his religious material.

First, Plaintiff claims that TDCJ policy violates the TRFRA, and that the policy is not the least restrictive means to further a compelling government interest. As a result, he seeks $10,000, for each act violating his free exercise of religion, and injunctive relief to prevent future burdening of his free exercise of religion. Second, Plaintiff claims that defendants violated the RLUIPA because defendants receive federal financial aid and because Kelley and Reyes indirectly financially benefitted from the federal financial assistance TDCJ receives. As a result, he seeks nominal damages, $50,000, in compensatory damages, $250,000, in punitive damages, and declaratory and injunctive relief to prevent further burden of free exercise of religion. Third, Plaintiff claims that Defendants Kelley and Reyes, both in their individual and official capacity, violated civil rights protected by the First, Fifth, and Fourteenth Amendments. As a result, he seeks nominal damages, $50,000, in compensatory damages, $50,000, in punitive or exemplary

damages, and injunctive relief against Kelley and Reyes preventing them from further violating his constitutional rights. Fourth, Plaintiff claims that the policy violates rights protected by Article 1, Sections 3, 6, 13, and 19 of the Texas constitution. Plaintiff seeks nominal damages, $50,000, in compensatory damages, $50,000, in punitive or exemplary damages, and injunctive relief to prevent further violation of civil rights guaranteed by the Texas constitution. Last, Plaintiff claims that the policy tortiously interfered with the peaceful use and enjoyment of his religious property. As a result, he seeks relief against Kelley and Reyes in their individual capacities for nominal damages, compensatory damages in the amount of $50,000, punitive or exemplary damages in the amount of $50,000, and injunctive relief to prevent further violation of his property rights.

## Scope of Screening

28 U.S.C. §§ 1915(e)(2), and 1915A limit preliminary screening to determining whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Preliminary screening is limited to determine if a claimant's allegations are "inherently plausible and internally consistent." *Wesson v. Oglesby*, 910 F.2d 278, 282 (5th Cir. 1990).

## Discussion

To prevail in a § 1983 claim for denial of free exercise of religion under the First Amendment, an inmate must show that the regulation is not reasonably related to a legitimate penological interest. *Turner v. Safely*, 482 U.S. 78, 89 (1987); *Green v. Polunsky*, 229 F.3d 486, 491 (5th Cir. 2000) (holding no free exercise of religion violation because TDCJ's grooming policy was "reasonably related to legitimate penological interests."); *Freeman v. TDCJ*, 369 F.3d 854, 860-61 (5th Cir. 2004). In other words, the prison policy may be struck down only "if its

relationship to the government objective is 'so remote as to render the policy arbitrary or irrational.'" *Freeman*, 369 F.3d at 861 (quoting *Turner*, 482 U.S. at 89-90).

Section 3 of RLUIPA, 114 Stat. 804, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, unless the burden furthers a compelling governmental interest, and does so by the least restrictive means." *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id.* at 721. "RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d at 612.

"Under RLUIPA, [the court must] first ask whether the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *Id.* at 613. "This normally requires two separate assessments, first whether the burdened activity is 'religious exercise,' and second whether that burden is 'substantial.'" *Id.* The Act defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Cutter*, 544 U.S. at 715 (quoting § 2000cc-5(7)(A)). "The plaintiff has the burden of persuasion on whether the challenged government practice substantially burdens [his] exercise of religion." *Adkins v. Kaspar*, 393 F.3d 559, 567 n. 32 (5th Cir. 2004). "Once the plaintiff establishes this, the government bears the burden of persuasion that application of its substantially burdensome practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest." *Id.* "Although RLUIPA's standard places a heavy burden on the state,

context matters in the application of that standard." *Chance* v. *Texas Dep't of Criminal Justice*, 730 F.3d 404, 410 (5th Cir. 2013) (quoting *Cutter*, 544 U.S. at 723).

TRFRA provides that "a government agency may not substantially burden a person's free exercise of religion . . . [unless the] agency demonstrates that the application . . . is in furtherance of a compelling government interest[,] and is the least restrictive means of furthering that interest." TEX. CIV. PRAC. & REM. CODE ANN. § 110.003 (West). TRFRA is the state's counterpart to RLUIPA. *Balawajder v. TDCJ*, 217 S.W.3d 20, 26, n. 4 (Tex. App.—Houston [1st Dist.] 2006); *see generally Barr v. City of Sinton*, 295 S.W.3d 295, 296, n. 42 (Tex. 2009) ("Because TRFRA . . . and RLUIPA were all enacted in response to *Smith* and were animated in their common history, language, and purpose by the same spirit of protection of religious freedom, we will consider decisions applying the federal statutes germane in applying the Texas statute."); *see Adkins v. Kaspar*, 393 F.3d 559, 567, n. 32 (5th Cir. 2004). Although substantially similar, TRFRA differs from RLUIPA in that a "complaining party must *rebut* the presumption that any prison regulation that substantially burdens a prisoner's free exercise of religion is in furtherance of a compelling governmental interest and the least restrictive means of furthering that interest." *Balawajder*, 217 S.W.3d at 26 (emphasis added) (citing TEX. GOVT. CODE ANN. § 493.024 (Vernon 2004). In *Balawajder*, plaintiff made complaints similar to Avilez that AD-3.72 burdened his free exercise of religion under TRFRA. The First Court of Appeals, Houston concluded that plaintiff had met his burden to rebut the presumption and that TDCJ had the ultimate burden to prove AD-3.72 furthered a compelling governmental interest in the least restrictive means. *Balawajder*, 271 S.W.3d at 33. Because certain fact issues lingered, the court reversed and remanded for further consideration on whether it could be conclusively established that AD-3.72 violated TRFRA. *Id.*

Based on the foregoing discussions of the law, Avilez's complaint, the testimony from the *Spears* hearing, and the institutional record produced by Defendants, this Court determined that Avilez stated claims sufficient to survive preliminary screening. In an order dated October 27, 2014, the Court ordered responsive pleadings, (Doc. 10), and Defendants have since been duly served. (Doc. 11-16). Defendants filed their answer on November 19, 2014. (Doc. 17).

## Conclusion

This Court has disposed of all non-dispositive issues. In the absence of consent from the parties, this action must be transferred to the district court for further proceedings.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 12th day of March, 2015.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**